UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
:
DAVID A. TROPP,                                : Hon. Eric N. Vitaliano, U.S.D.J.
                                               : Hon. Roanne L. Mann, U.S.M.J.
            Plaintiff,                         :
                                               :
      v.                                       : Civil Action No. 1:08-cv-04446
                                               :
CONAIR CORPORATION, BROOKSTONE,                :
INC., BRIGGS & RILEY TRAVELWARE LLC,           :
DELSEY LUGGAGE INC., EBAGS, INC.,              :
EAGLE CREEK, a division of VF OUTDOOR,        :
INC., MASTER LOCK COMPANY, LLC, HP            :
MARKETING CORP. LTD, L.C. INDUSTRIES,         :
LLC, OUTPAC DESIGNS INC., MAGELLAN'S          :
INTERNATIONAL TRAVEL CORPORATION,             :
SAMSONITE CORPORATION, TITAN                   :
LUGGAGE USA, TRAVELPRO                         :
INTERNATIONAL INC, TUMI, INC, TRG             :
ACCESSORIES, LLC, and WORDLOCK, INC.,         :
                                               :
            Defendants.                        :
                                               :
-----------------------------------------------------------------x


**CERTAIN DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION FOR SUMMARY JUDGMENT BASED ON 28 U.S.C. § 1498**


Dated: January 8, 2010

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

I.     INTRODUCTION ................................................................................................1

II.    FACTUAL BACKGROUND .................................................................................1

III.    ARGUMENT .....................................................................................................4

    A.    Summary Judgment Standard .................................................................4

    B.    28 U.S.C. § 1498 Precludes Tropp From Pursuing His Claims Against The Defendants .........................................................................................6

        1.    Even if Tropp's Patents Were Infringed by the Defendants' Activities (and They are Not), the Patented Method is "Used" by the United States Government. ................................................................7

        2.    The Defendants' Allegedly Infringing Activities were Performed "for" the United States Government. .........................................9

        3.    The Defendants' Allegedly Infringing Activity is Performed with the "Authorization and Consent" of the United States Government. ..............11

        4.    28 U.S.C. §1498 is to be Interpreted Broadly and Precludes Tropp from Suing the Defendants for Patent Infringement ................................13

        5.    Establishing Infringement by the Government is Not a Prerequisite to Determining Jurisdiction under § 1498 .....................................15

IV.    CONCLUSION ..................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Advanced Software Design Corp. v. Federal Reserve Bank of St. Louis*,
  No. 4:07CV185, 2007 WL 3352365 (E.D. Mo. Nov. 9, 2007) ..............5, 9, 10, 11, 12, 13, 14

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)........................................................................................................5

*Auerbach v. Sverdrup Corp.*,
  829 F.2d 175 (D.C. Cir. 1987)........................................................................................9

*Bereslavsky v. Esso Standard Oil Co.*,
  175 F.2d 148 (4th Cir. 1949) .....................................................................................7, 12

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986).........................................................................................................5

*Consolidated Vacuum Corp. v. Machine Dynamics, Inc.*,
  230 F. Supp. 70 (S.D. Cal. 1964)....................................................................................6

*Goenaga v. March of Dimes Birth Defects Found.*,
  51 F.3d 14 (2d Cir. 1995) ...............................................................................................5

*Hughes Aircraft Co. v. Mess-Erschmitt-Boelkow-Blohm*,
  625 F.2d 580 (5th Cir. 1980) ..........................................................................................8

*Hughes Aircraft Co. v. United States*,
  534 F.2d 889 (Ct. Cl. 1976) ...............................................................................9, 11, 16

*Larson v. U.S.*,
  26 Cl. Ct. 365 (1992) .....................................................................................................12

*Lipton v. The Nature Co.*,
  71 F.3d 464 (2d Cir. 1995)...............................................................................................5

*M.J. Madey v. Duke University*,
  413 F. Supp. 2d 601 (M.D.N.C. 2006) .............................................................6, 9, 10, 11

*Manway Constr. Co.* v. *Housing Auth. of Hartford*,
  711 F. 2d 501 (2d Cir. 1983)............................................................................................5

*Nora Beverages, Inc. v. Perrier Group of America, Inc.*,
  164 F.3d 736 (2d Cir. 1998)............................................................................................5

*Richmond Screw Anchor Co. v. United States*,
  275 U.S. 331 (1928).........................................................................................................7

Table of Authorities
(continued)

Page(s)

*Sevenson Envtl. Servs., Inc. v. Shaw Envtl., Inc.,*
    477 F.3d 1361 (Fed. Cir. 2007)..................................................................9

*Trojan, Inc. v. Shat-R-Shield, Inc.*,
    885 F.2d 854 (Fed. Cir. 1989)..................................................................14

*TVI Energy Corp. v. Blane*,
    806 F.2d 1057 (Fed. Cir. 1986)..........................................................12, 14

*United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark*
    *Properties Meriden Square, Inc.*,
    30 F.3d 298 (2d Cir. 1994)........................................................................5

*W.L. Gore & Assocs., Inc. v. Garlock, Inc.*,
    842 F.2d 1275 (Fed. Cir. 1988)..............................................................14

*Ying Jing Gan v. City of New York*,
    996 F.2d 522 (2d Cir. 1993)......................................................................5

*Zoltek Corp. v. U.S.*,
    442 F.3d 1345 (Fed. Cir. 2006)..........................................................15, 16

**STATUTES**

28 U.S.C. § 1498.......................................................................................... *passim*

35 U.S.C. § 271(a) ....................................................................................15, 16

49 U.S.C. § 44901(c) ........................................................................................10

**OTHER AUTHORITIES**

Department of Health and Human Services Press Release, "HHS, Bayer Agree to Cipro
    Purchase," (http://www.hhs.gov/news/press/2001pres/20011024.html) ..................................7

Fed. R. Civ. P. 56(c) ..........................................................................................5

Webpage of Senator Charles E. Schumer, "Schumer: New Cipro Source Could
    Dramatically Increase Supply" (http://www.senate.gov/~schumer/state-
    101601_cipro.htm)..................................................................................7

## I.      INTRODUCTION

Defendants Conair Corporation, Brookstone, Inc., Briggs & Riley Travelware LLC, Delsey Luggage Inc., eBags, Inc., Eagle Creek, a division of VF Outdoor, Inc., Master Lock Company, LLC, HP Marketing Corp., Magellan's International Travel Corporation, Samsonite Corporation, Titan Luggage USA, Travelpro International, Inc., Tumi, Inc., TRG Accessories, LLC, and Wordlock, Inc. (collectively, the "Defendants"), hereby submit this Memorandum of Law in support of their Motion for Summary Judgment Based on 28 U.S.C. § 1498.  Plaintiff David A. Tropp's ("Tropp") Complaint alleging patent infringement is not properly before this Court and should be dismissed.  Specifically, pursuant to § 1498, Tropp may only assert infringement claims against the United States government – *not* the Defendants – and thus only in the United States Court of Federal Claims because the allegedly infringing method is performed both "by" and "for" the United States government and with its "authorization [and] consent."  Accordingly, summary judgment should be granted in favor of the Defendants on Tropp's patent infringement claims as a matter of law.

## II.     FACTUAL BACKGROUND

Following the tragic events of September 11, 2001, the security landscape in America changed dramatically, particularly as it related to airport security and commercial air travel.  On the front lines of this change was (and is) the Transportation Security Administration ("TSA"), a governmental agency under the Department of Homeland Security that was formed immediately after 9/11.  (S. ¶ 1).[1]  The TSA plays a crucial role in the United States' efforts to combat

---

[1] All relevant, undisputed facts are more fully detailed in *Certain Defendants' Statement of Material Facts to Which There is No Genuine Issue to Be Tried* (the "Statement"), concurrently filed herewith pursuant to Local Rule 56.1.  That Statement contains page or paragraph references to supporting pleadings, depositions, answers to interrogatories, admissions, and affidavits.  Record citations in this memorandum are to the numbered paragraphs of the Statement (S. ¶ __), which, in turn, make appropriate citations to the supporting documents or testimony.

terrorism, with a specific mission of "protect[ing] the Nation's transportation systems to ensure freedom of movement for people and commerce."   (S. ¶ 2).

On December 19, 2002, the TSA publicly announced that, pursuant to the Aviation and Transportation Security Act, it would begin to screen 100% of checked airline luggage in the United States on January 1, 2003 (the "Screening Mandate").  (S. ¶ 4).  The Screening Mandate posed significant logistical challenges to the TSA, including amplifying the problems associated with the TSA's policy of clipping luggage locks from checked luggage in order to perform security inspections.  (S. ¶ 5).  Among other things, the lock clipping policy increased the risk of injury to luggage screeners and the likelihood of claims of theft and pilfering by traveling passengers.  *Id*.

In response to the Screening Mandate and the problems presented by the TSA's lock clipping policy, the founder of Travel Sentry, Inc. ("Travel Sentry"), John Vermilye ("Vermilye"), developed a system – resulting from a collaboration among lock and luggage manufacturers and other retailers – that improved the existing luggage key ring system Vermilye had overseen at the TSA (where TSA screeners used key rings with sets of master keys from the most common luggage brands to open screened luggage).  (S. ¶ 6).  Travel Sentry's improved method involved lock manufacturers agreeing to a dual access lock standard that allowed for a much smaller number of proprietary master keys or tools given exclusively to the TSA, thus increasing the TSA's efficiency in opening, inspecting and re-locking locked luggage, and all but eliminating the need for the TSA to clip luggage locks.  (S. ¶¶ 7, 8).  Travel Sentry entered into a Memorandum of Understanding with the TSA, dated October 16, 2003 (the "MOU"), that provides, among other things, that the "TSA will make good faith efforts to distribute the passkeys and information provided by Travel Sentry on the use of the passkeys, and to use the

passkeys to open checked baggage secured with Travel Sentry certified locks whenever practicable."  (S. ¶ 13).  The Travel Sentry system was commercially launched on November 12, 2003.  (S. ¶ 15).

As part of the system, Travel Sentry licenses its trademarked logo – which helps identify a lock as one that can be opened by the TSA – to lock and luggage distributors and manufacturers for use on their products.  (S. ¶ 12).  The Defendants are entities that are accused of distributing or selling luggage and/or luggage locks that bear Travel Sentry's trademark.  (*See* Complaint, Docket Entry 1, at ¶¶ 2-18).

On November 12, 2003, Tropp filed his first patent application for his "Method for Improving Airline Luggage Inspection."  (S. ¶ 9).  Tropp's patents issued April 4, 2006, and May 6, 2006, respectively.[2]  *Id*.  The '537 and '728 Patents claim a method whereby dual access luggage locks are made available to consumers and processed by TSA luggage screeners using a previously provided master key.  (S. ¶ 10).  The Patents' claims each recite the following step (the "luggage screening step"):

> the luggage screening entity acting pursuant to a prior agreement to look for the identification structure while screening luggage and, upon finding said identification structure on an individual piece of luggage, to use the master key previously provided to the luggage screening entity to, if necessary, open the individual piece of luggage.

(S. ¶ 11).  The luggage screening step can only be performed by the TSA as it is the sole entity that screens airline luggage in the United States.  (S. ¶ 3).

The TSA has been aware of Tropp's claim that he "invented" this "method for improving airline luggage inspection" since he sent his "unsolicited proposal" to the TSA in January 2003

---

[2]  U.S. Patents Nos. 7,021,537 (the "'537 Patent") and 7,036,728 (the "'728 Patent") both are entitled "Method of Improving Airline Luggage Inspection."

that purportedly described the claims set forth in the Patents.[3]  (S. ¶ 17).  In addition, the TSA

has been on notice of the existence of Tropp's Patents since, at the latest, May 2007 (and long

before this action was filed), when Travel Sentry made a *Touhy* request to the TSA for

production of documents relevant in the pending Travel Sentry litigation (the "Related Action").

(S. ¶ 18).  Nevertheless, the TSA continues to recognize and process Travel Sentry marked locks,

allows lock and luggage retailers to use the TSA's name in their marketing materials, and even

lists Travel Sentry marked locks, along with locks sold by Tropp's company (Safe Skies, LLC),

on the TSA website as being recognized by the agency.[4]  (S. ¶¶ 16, 19).  Moreover, the TSA also

has entered into an MOU with Tropp and Safe Skies, similarly recognizing and using the system

to open Safe Skies marked locks during screening.  (S. ¶ 19).  Notably, despite Tropp's claims of

patent protection, as set forth in the Complaint, the TSA has never attempted to void or otherwise

rescind either of the MOUs, and continues to operate the 100% screening of luggage locked with

both Travel Sentry and Safe Skies marked locks, through the use of the proprietary master keys

and tools.  (S. ¶¶ 16, 20).

### III.   ARGUMENT

### A.   Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that a court shall grant a motion

for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue of material fact

---

[3]  However, for the reasons described in Travel Sentry's Motion for Summary Judgment on Grounds of Invalidity
(in the related Travel Sentry case – No. 1:06-cv-06415 – Docket Entry ("DE") 135, at 3, 6-7), Tropp's "unsolicited
proposal" did not recite all of the steps of the Patents' claims.  It only described the dual access locks generally and
that TSA would use master keys to open and inspect – but nothing about (1) the marketing and making available to
consumers steps or (2) an agreement with the TSA.

[4]  Indeed, the TSA's website (with links to both Travel Sentry's and Tropp's websites), explicitly references Tropp's
patents.  (S. ¶ 19).

and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  As to issues on which the non-moving party has the burden of proof, the moving party may simply point out the absence of evidence to support the non-moving party's case.  *Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 164 F.3d 736, 742 (2d Cir. 1998) (citing *Celotex*, 477 U.S. at 322-23).  Only disputes over facts that might affect the outcome of the case under governing law will properly preclude the entry of summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has met its burden, the non-moving party must set forth specific facts showing that there is a genuine issue for trial in order to defeat the motion.  *Anderson*, 477 U.S. at 255.  A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a Summary Judgment Motion."  *Lipton v. The Nature Co*., 71 F.3d 464, 469 (2d Cir. 1995).  Additionally, a party may not rest on the "mere allegations or denials" contained in its pleadings.  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995); *see also Ying Jing Gan v. City of New York,* 996 F.2d 522, 532 (2d Cir. 1993) (party may not rely on conclusory statements or an argument that the affidavits in support of the motion for summary judgment are not credible).

"[I]f appropriate, a defense arising under § 1498(a) should be resolved by summary judgment under Rule 56 . . . ."  *Advanced Software Design Corp. v. Federal Reserve Bank of St. Louis*, No. 4:07CV185, 2007 WL 3352365, at * 3 (E.D. Mo. Nov. 9, 2007).[5]

---

[5]  In this regard, Tropp's anticipated argument that this Motion should be denied because it is brought under Rule 56 rather than 12(b)(1) is frivolous.  Because circuit courts differ over whether a § 1498 analysis is jurisdictional or subject matter based, out of an abundance of caution, Defendants have moved for summary judgment.  Regardless, even if § 1498 is a subject matter based argument, "any party or the court sua sponte, at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction."  *United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994) (quoting *Manway Constr. Co.* v. *Housing Auth. of Hartford*, 711 F. 2d 501, 503 (2d Cir. 1983)).

**B.    28 U.S.C. § 1498 Precludes Tropp From
Pursuing His Claims Against The Defendants**

Tropp's allegations of patent infringement fail as a matter of law because, under § 1498, the only party, if any, that Tropp may sue for infringement is the United States government, and only in the United States Court of Federal Claims.  In relevant part, § 1498 provides:

> Whenever an invention described in and covered by a patent of the United States is *used* or manufactured *by or for the United States* without license of the owner thereof . . ., *the owner's remedy shall be by action against the United States in the United States Court of Federal Claims . . . .*

> For the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation *for the Government* and *with the authorization or consent of the Government*, shall be construed as use or manufacture for the United States.

(Emphasis added).  Government "authorization" and "consent" can be either express or implied. *M.J. Madey v. Duke University*, 413 F. Supp. 2d 601, 607 (M.D.N.C. 2006).  Here, it is undisputed that the alleged infringing luggage screening step is "used" by the United States and other allegedly infringing steps, to the extent they may be performed, are performed by the Defendants "for" the United States and with its "authorization" and "consent."  Accordingly, even if there were infringement (which there is not), the Defendants cannot be liable to Tropp for patent infringement.[6]

The purpose of § 1498 is to "relieve contractor[s] entirely of liability of every kind for infringement of patents in manufacturing anything for the government and to limit the owner of the patent . . . to suit against the United States in the Court of Claims . . . ." *Consolidated Vacuum Corp. v. Machine Dynamics, Inc.*, 230 F. Supp. 70, 72 (S.D. Cal. 1964).  This derives

---

[6] The mere fact that the TSA, despite having known for years of Tropp's alleged "invention" and his claims that the Travel Sentry system infringes his patents, has not stopped performing the luggage screening step on Travel Sentry marked locks each and every day at the over 400 commercial airports in the United States is proof that the TSA has acknowledged and consented to using the allegedly infringing method.

from the statute's original purpose of "stimulat[ing] contractors to furnish what was needed for [World War I] without fear of becoming liable themselves for infringements to inventors or the owners or assignees of patents."  *Bereslavsky v. Esso Standard Oil Co.*, 175 F.2d 148, 150 (4th Cir. 1949) (quoting *Richmond Screw Anchor Co. v. United States*, 275 U.S. 331, 345 (1928)). The current security climate, much like that during previous wars, often requires the government to seek out improvements to its existing security methods – including how to gain access to passengers' luggage to search for explosives or other evidence of terrorism without breaking locks.[7]  If private companies, such as the Defendants, offer a product to the public that satisfies the government's objectives, even if doing so violates a valid patent, they cannot be subject to patent infringement claims, as long as the patented invention is "used" by the United States government or the Defendants' work is done (1) "for" the United States, and (2) with its "authorization" and "consent."  Each of these criteria indisputably is met here.

       1.     Even if Tropp's Patents Were Infringed by the Defendants' Activities (and They are Not), the Patented Method is "Used" by the United States Government.

It cannot be disputed that the TSA is the only entity capable of performing the luggage screening step recited by the Patents, as it is the only entity that conducts airport luggage screening in the United States.  (S. ¶ 3).  Given that one must perform the luggage screening step (along with all of the other steps) in order for there to be any infringement, Tropp's Patents

---

[7]  Another such example is the government's use of § 1498 to purchase generic ciprofloxacin (commonly known as Cipro) following the anthrax attacks of 2001.  Although Bayer held the patent for Cipro until 2003, certain members of the government, including Senator Charles Schumer (D-NY), worried that the company would be unable to produce sufficient amounts of Cipro if there were a large scale anthrax attack and that the government would have to spend too much on the drug due to the markup Bayer was able to charge because of its patents, and threatened to use §1498 to obtain the drug from generic suppliers.  *See*, *e.g.*, Webpage of Senator Charles E. Schumer, "Schumer: New Cipro Source Could Dramatically Increase Supply" (http://www.senate.gov/~schumer/state-101601_cipro.htm) ("Federal law – 28 U.S.C. §1498 – allows the United States to purchase products like ciprofloxacin for official use from manufacturers other than the patent holder.").  The dispute was ultimately resolved without the government needing to rely on § 1498, when Bayer agreed, among other things, to decrease the price of Cipro and increase the amount available to the government.  *See* Department of Health and Human Services Press Release, "HHS, Bayer Agree to Cipro Purchase," (http://www.hhs.gov/news/press/2001pres/20011024.html).

*require* "use" by the government for there to be infringement. This inherent aspect of the Patents compels no other conclusion than that, to the extent there may be infringing activity, it falls within the purview of § 1498 because Tropp's purported invention is "used" by the United States.

In *Hughes Aircraft Co. v. Mess-Erschmitt-Boelkow-Blohm*, 625 F.2d 580, 581 (5th Cir. 1980), the court was asked to determine whether the government's activity constituted "use" of a patented invention for the purposes of § 1498. There, a German firm undertook to build two space vehicles for the German government that the plaintiff alleged were covered by its patent for "a system for controlling spin-stabilized spacecraft." *Id.* The United States government entered into an agreement with the German government allowing the Germans to launch the space vehicles from Cape Canaveral, Florida. *Id.* In addition, the agreement provided that the project would provide both German and U.S. experimenters the opportunity to run experiments using the space vehicles. *Id.* at 581-82. The United States also contributed $80 million to the $260 million project. *Id.* at 582. Based on these facts, the Court determined "there was 'use' by or for the United States of the [] spacecraft systems sufficient to vest exclusive jurisdiction for plaintiff's patent infringement claims in the Court of Claims" pursuant to § 1498. *Id.* at 584.

Here, the government's "use" of the allegedly infringing method is even clearer than in the *Hughes Aircraft* case. Unlike in *Hughes Aircraft*, where infringement could have conceivably occurred without the United States government's involvement, here Tropp's Patents cannot be infringed unless the method is "used" by the United States. That is, it is undisputed that the TSA (and only the TSA) performs all airline luggage screening in the United States. Furthermore, in practice, the TSA "uses" the allegedly infringing method by recognizing and processing both Travel Sentry and Safe Skies marked locks in performing its luggage screening

8

duties.  Ultimately, because it cannot be disputed that the United States government must "use" the method claimed by the Patents for there to be infringement, § 1498 applies and Tropp's claims against the Defendants must be dismissed as a matter of law.

>    2.    The Defendants' Allegedly Infringing Activities were
>          Performed "for" the United States Government.

It is also beyond dispute that the Defendants' allegedly "infringing" activity, namely bringing the TSA locks to the market, is done, in part, "for" the United States government.[8] There is nothing in the record that can rebut this point.  As a preliminary matter, the TSA is an executive agency and thus clearly constitutes the "United States government" for purposes of §1498.  "A use is 'for the Government' if it is 'in furtherance and fulfillment of a stated Government policy' which serves the Government's interests and which is 'for the Government's benefit.'"  *M.J. Madey*, 413 F. Supp. 2d at 607; *see also Hughes Aircraft Co. v. United States*, 534 F.2d 889, 897-98 (Ct. Cl. 1976)*; Advanced Software Design Corp.*, 2007 WL 3352365, at * 4 (noting that "'for the government' means that the use must take place in furtherance of government policy and with some benefit accruing to the government").[9]

Indeed, the benefit to the government need not even be the "primary purpose" of the contract or relationship between the government and its supplier.  *See Sevenson Envtl. Servs., Inc. v. Shaw Envtl., Inc.*, 477 F.3d 1361, 1365 (Fed. Cir. 2007).  "Where courts have held §1498

---

[8]  For the same reasons set forth in Travel Sentry's Motion for Summary Judgment on Grounds of Non-Infringement (in the Related Action, DE 134 at 6-15), the Defendants, of course, do not and cannot infringe either the '537 or '728 Patents.  That is, none of the Defendants performs, or direct or control any other's performance of, all of the steps set forth in the Patents' claims.

[9]  The question of whether an infringing activity has been performed "for" the government is simple and straightforward and often is addressed within the second prong of §1498, authorization and consent.  The Federal Circuit has held that in cases where, as here, allegedly infringing activity has been performed by a third-party (*i.e.*, Travel Sentry) pursuant to a contract with the government and for the benefit of the government, "*courts have all but bypassed a separate inquiry into whether infringing activity was performed 'for the government.*"  *Sevenson Envtl. Servs., Inc. v. Shaw Envtl., Inc.*, 477 F.3d 1361, 1365 (Fed. Cir. 2007) (quoting *Auerbach v. Sverdrup Corp.*, 829 F.2d 175, 180-81 (D.C. Cir. 1987)) (emphasis added).

not to apply, it has generally been because the government interest involved was seen as too remote. . . .   In contrast, courts have found that defendants acted 'for the government' in situations where there was a clear government directive with some specific benefit accruing to the government." *Advanced Software Design Corp.*, 2007 WL 3352365, at * 5.  Here, there are numerous government policies that the Defendants' commercial sales of locks are "in furtherance and fulfillment of," including, but not limited to, Congress' explicit mandate that 100% of checked baggage be screened, *see* 49 U.S.C. § 44901(c), and the TSA's express desire to do so with least amount of inconvenience and disturbance to passengers and commercial flight schedules.  (S. ¶ 16).

Absent the TSA's express need for a safer and more user-friendly luggage access method that would allow it to comply with the Screening Mandate, the Defendants would not have brought Travel Sentry marked locks to the market.  Indeed, there would have been much less of a need, if any at all, for Travel Sentry (or Safe Skies) marked locks but for the Screening Mandate.  If the TSA had not agreed to utilize the system – for its own benefit – and agreed that it would recognize and open locks bearing the Travel Sentry trademark to inspect for any dangerous content, there would have been no commercial market for Travel Sentry (or Safe Skies) marked locks, and thus no reason to develop them.  Accordingly, even though the Defendants may have had a commercial motive for developing and selling Travel Sentry marked locks (and thereby allegedly infringing Tropp's Patents), it is nevertheless done "in furtherance and fulfillment of" governmental policy.  *See M.J. Madey*, 413 F. Supp. 2d at 607.

There can be no dispute, moreover, that the government has benefited from the Defendants' sale of Travel Sentry marked locks (as well as Tropp's sale of Safe Skies locks). Now, rather than using the cumbersome key rings that existed prior to the Travel Sentry system

10

(which contained 35 or more keys), TSA screeners can use rings with only a few keys and/or tools, and thereby cut down on the time it takes to open locked luggage. Further, because accessing locked luggage is easier, and clipping locks is much less necessary, there will ostensibly be fewer accidents and injuries to TSA screeners. There will also presumably be fewer complaints from customers whose locks have been clipped, property has gone missing, and flights have been delayed as a result of a cumbersome screening process. Indeed, evidence that the Travel Sentry marked locks benefit the government includes, among other things, (1) the fact that the TSA entered into the MOU, whereby it stated its willingness to utilize the system; and (2) the TSA's recognition of Travel Sentry marked locks as being "TSA Recognized." (S. ¶¶ 13, 18). Were there no benefit to the government, the TSA surely would not have taken these affirmative steps on behalf of a private company.

> 3.   The Defendants' Allegedly Infringing Activity is Performed with the "Authorization and Consent" of the United States Government.

"A use is with the 'authorization and consent of the Government' where the Government either expressly or impliedly consents to the infringement." *M.J. Madey*, 413 F. Supp. 2d at 607. Notably, there is no requirement that authorization or consent appear on the face of a particular contract (nor must the United States be a direct party to the contract at issue, so long as it is a beneficiary of it). *See Hughes Aircraft Co.*, 534 F.2d at 901 (noting that "'authorization or consent' on the part of the Government may be given in many ways other than by letter or other direct form of communication"); *Advanced Software Design Corp.*, 2007 WL 3352365, at * 5 ("Section 1498 by its terms does not require that there be a government contract mandating infringement."). Rather, implied consent may be given "by contracting officer instructions, by specifications or drawings which impliedly sanction and necessitate infringement, [or] by post hoc intervention of the Government in a pending infringement litigation against individual

11

contractors," among other things.  *Id.*   This includes, but is not limited to, situations where: "(i) the government expressly contracted for work to meet certain specifications; (ii) the specifications cannot be met without infringing on a patent; and (iii) the government had some knowledge of the infringement."  *Larson v. U.S.*, 26 Cl. Ct. 365, 370 (1992).  "To limit the scope of § 1498 only to instances where the Government requires by specification that a supplier infringe another's patent would defeat the Congressional intent to allow the Government to procure whatever it wished regardless of possible patent infringement."  *TVI Energy*, 806 F.2d at 1060; *see also Bereslavsky*, 175 F.2d at 150 ("To limit the application of the statute to cases where officers of the government intentionally contract for patent infringement would in very large measure defeat its purpose.").

Here, there can be no doubt that the government has given manufacturers and distributors of Travel Sentry marked locks its "authorization and consent" to perform the method in Tropp's Patents (even though the Patents are not valid and no one has, in fact, infringed them).  First, the TSA entered into the MOUs with both Travel Sentry and Safe Skies, whereby the TSA stated its willingness to utilize Travel Sentry's and Safe Skies' system whenever practicable and certified that Travel Sentry and Safe Skies marked locks meet certain TSA-mandated specifications.  (S. ¶ 13).  The TSA has been aware for years of Tropp's claim that the Travel Sentry concept infringes upon his Patents, as evidenced by its involvement in the Related Action, yet it has never terminated the MOU and continues to recognize, use and publicize its use of the Travel Sentry system on the official TSA website.  (S. ¶¶ 16-20).  Accordingly, by virtue of entering into the MOU and continuing to utilize the system each and every day, the government has "authorized" and "consented" to the Defendants' actions, which Tropp alleges infringe upon his Patents.  *See*, *e.g.*, *Advanced Software Design Corp.*, 2007 WL 3352365, at * 7.

Second, the government has impliedly authorized and consented to the Defendants'
allegedly infringing activities in other ways, in addition to entering into the MOU.  Specifically,
despite knowing about Tropp's infringement claims, the TSA continues to use the Travel Sentry
system, recognize Travel Sentry marked locks, allow Travel Sentry licensees to use the TSA
name and trademark, and identifies Travel Sentry marked locks on its official website as a "TSA
Recognized" lock.  (S. ¶¶ 16, 19, 20).  Perhaps the best evidence of the government's
"authorization and consent" in this case is its own words.  On the official TSA website, it states
that the "TSA has worked with several companies [*i.e.*, Travel Sentry and Safe Skies] to develop
locks that can be opened by security officers using universal 'master' keys so that the locks may
not have to be cut."  *See* Transportation Security Administration: Air Travel: TSA Recognized
Locks (http://www.tsa.gov/travelers/airtravel/assistant/locks.shtm); (S. ¶ 19).  By continuing to
assert that it "work[s] with" Travel Sentry to develop the system, and, in fact, using the system,
the TSA has impliedly authorized and consented to the very activity that Tropp alleges infringes
upon his Patents.

4.    28 U.S.C. §1498 is to be Interpreted Broadly and Precludes
Tropp from Suing the Defendants for Patent Infringement

Tropp may argue that because the Defendants are not the type of entities that are typical
"government contractors," their actions fall outside the scope of § 1498.  Courts have rejected
similar arguments time and again, holding that as long as the allegedly infringing activity is done
"for" the United States, it is protected, regardless of whether the government specifically
contracted for it and regardless of whether the accused infringer is a traditional government
contractor.  *See*, *e.g.*, *Advanced Software Design Corp.*, 2007 WL 3352365, at * 4 ("The statute
does not by its terms explicitly require that the government contract for the infringing device.
Rather, it merely applies in any case where the invention is used 'for' the United States.").

13

"The coverage of § 1498 should be *broad* so as not to limit the Government's freedom in procurement by considerations of private patent infringement." *TVI Energy Corp. v. Blane*, 806 F.2d 1057, 1060 (Fed. Cir. 1986) (emphasis added). Indeed, the statute's plain language makes clear that its coverage is not limited solely to government contractors, but also protects "*any person, firm, or corporation*" that uses or manufactures a patented invention "for" the United States and with its consent and authorization. 28 U.S.C. § 1498 (emphasis added); *see also TVI Energy Corp.*, 806 F.2d at 1060 (rejecting argument that a party was outside the scope of § 1498 because it was "merely a competitor for a Government contract and not yet an approved Government source"); *Trojan, Inc. v. Shat-R-Shield, Inc.*, 885 F.2d 854, 856 (Fed. Cir. 1989) (noting that even a "*potential* supplier of an infringing product for the government is 'immune' from injunctive relief barring manufacture, sale, or bidding to supply such a product.") (emphasis added) (citing *W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 842 F.2d 1275, 1281-82 (Fed. Cir. 1988)); *Advanced Software Design Corp.*, 2007 WL 3352365, at * 5 ("Section 1498 by its terms does not require that there be a government contract mandating infringement.").

As discussed above, the Defendants' actions were undertaken "for" the United States government, with its authorization and consent. The fact that the Defendants themselves do not have agreements with the TSA is irrelevant. *See, e.g.*, *Advanced Software Design Corp.*, 2007 WL 3352365, at * 4-*7 (rejecting plaintiff's argument that § 1498 was inapplicable because defendant never contracted with the government, and its work was therefore not done "for" the government, because the government consented to the implementation of the defendant's system when it participated in a program utilizing the system). Thus, just as in *Advanced Software Design Corp.*, the government consented to the Defendants' development and sale of Travel Sentry marked locks when it began processing them, and § 1498 is therefore applicable.

14

5.    Establishing Infringement by the Government is *Not* a
      <u>Prerequisite to Determining Jurisdiction under § 1498</u>

Tropp evidently will argue that § 1498 does not apply here because the TSA only performs the luggage screening step, and not *all* of the steps of the method, and thus the method is not performed "by" the government.  This argument, among the other frivolous arguments in his December 10, 2009 pre-motion response letter (DE 128), essentially is saying that the § 1498 jurisdictional analysis of limiting the patentee's remedy to suit against the government in the court of claims *only* applies where the government infringes.  Clearly that is not the law, as there would be no reason to sue and prove infringement in the court of claims if it were.  In making this argument, Tropp incorrectly equates the jurisdictional inquiry, whether a method is performed "by" the government, with an infringement inquiry under 35 U.S.C. § 271(a).  Nothing in the case law supports this point.

The only case Tropp does cite is totally inapposite.  In *Zoltek Corp. v. U.S.*, 442 F.3d 1345 (Fed. Cir. 2006), the Federal Circuit addressed whether the United States government could be liable for infringement under § 1498(a) where the patented methods were performed in part outside the United States.  *Id.* at 1350.  There, the patentee (Zoltek Corp.) was suing the government in the court of claims because the government was allegedly performing a method covered by Zoltek's patents.  *Id.* at 1349.  Zoltek claimed that the government was liable for infringement because its contractor, Lockheed Martin (and Lockheed's subcontractors), performed the patented method in manufacturing the F-22 fighter aircraft.  *Id.*  The Federal Circuit held that the court of claims was correct in finding that there must be direct infringement by the government under 35 U.S.C. § 271(a) for the government to be *liable* under § 1498(a).  *Id.* at 1350.  Ultimately, because § 271(a) requires that the entire act of infringement occur "within the United States," and certain steps of the patent at issue were performed in Japan, there was no

15

infringement.  *Id.*  As the concurring opinions also explained, the fact that some of the steps were performed outside the United States, meant there also was no liability under § 1498(c), which excludes the applicability of § 1498 for infringing activity outside the United States.  *Id.* at 1358.

Accordingly, *Zoltek* stands only for the proposition that once in the court of claims, the court must apply the same infringement analysis against the government as is applied in the district court against any other infringer under § 271(a), to determine whether there is *liability* for infringement under § 1498.  However, *Zoltek* does not support, as Tropp asserts, that in determining which court has *jurisdiction* and whether non-governmental defendants can be sued, a district court must first assess whether there is infringement by the government under § 271(a).  Indeed, in each of the cases in which district courts have made the jurisdictional determination – the one presented here – as to whether the patentee may only sue the government in the court of claims, those courts have not performed a prior infringement analysis.  *See, e.g.*, *Hughes Aircraft Co.*, 534 F.2d at 902 (in determining that patentee's remedy was limited to claims against the government in the court of claims because of § 1498, the court did not have to analyze whether the government performed each step of the accused method to determine that it was performed "by" the government).

For these reasons, determining that a patentee can only sue the government under § 1498 (because the undisputed record shows that the accused method is performed, at least in part, "by" the government) does not require (or equate to) a finding that the government is liable for its performance of each and every step of the accused method under § 271(a).  That determination is the province of the court of claims.  But even if § 1498 did so require, it is beyond dispute that the accused steps, if performed at all, are performed "for" the government pursuant to its

authorization and consent to the use of the Travel Sentry system.  (S. ¶¶ 18, 20).  Thus, under either theory ("by" or "for"), § 1498 jurisdiction controls.

## IV.  CONCLUSION

For the foregoing reasons, Defendants Conair Corporation, Brookstone, Inc., Briggs & Riley Travelware LLC, Delsey Luggage Inc., eBags, Inc., Eagle Creek, a division of VF Outdoor, Inc., Master Lock Company, LLC, HP Marketing Corp., Magellan's International Travel Corporation, Samsonite Corporation, Titan Luggage USA, Travelpro International, Inc., Tumi, Inc., TRG Accessories, LLC, and Wordlock, Inc., respectfully request that the Court grant Summary Judgment on its behalf, based on § 1498.


Dated:  Boston, Massachusetts
        January 8, 2010


By:   _/s/ Heidsha Sheldon_____
        William L. Prickett (WP-7278)
        Heidsha Sheldon (HS-6493) (*Pro hac vice*)
        Zachary W. Berk (ZB-0459)(*Pro hac vice*)
        SEYFARTH SHAW LLP
        Two Seaport Lane, Suite 300
        Boston, MA 02210-2028
        (617) 946-4800

        *Attorneys for Defendants Conair Corporation, Master Lock Company, LLC, HP Marketing Corp., Samsonite Corporation, Titan Luggage USA, Travelpro International, Inc., and TRG Accessories LLC*

By:   _/s/  Anthony J. DiFilippi_____
        Anthony J. DiFilippi, Esq.
        Abelman, Frayne & Schwab
        666 Third Avenue
        New York, NY 10017-5621
        (212) 885-9215

        *Attorneys for Defendant Briggs & Riley Travelware LLC*


17

By:   _/s/ _Theodore J. McEvoy_____
    Brian Carpenter
    Theodore J. McEvoy (TM-8180)
    Greenberg Traurig
    200 Park Avenue
    Florham Park, NJ  07932
    (973) 443-3525

    *Attorneys for Defendant Brookstone, Inc.*
    *and Eagle Creek, a division of VF*
    *Outdoor, Inc.*

By:   _/s/ _Janet Cullum_____
    Janet Cullum (SP-7620)
    Carolyn Juarez
    Cooley Godward Kornish LLP
    The Grace Building
    1114 Avenue of the Americas
    New York, NY 10036
    (212) 479-6000

    *Attorneys for Defendant eBags, Inc.*

By:   _/s/ _Daniel G. Brown_____
    Daniel G. Brown, Esq. (DB-    )
    Omar Jabri, Esq.
    Wilson, Sonsini, Goodrich & Rosati PC
    1301 Avenue of the Americas
    New York, NY  10019
    (212) 999-5800

    *Attorneys for Defendant Wordlock Inc.*

By:   _/s/ _Chris Longero_____
    Chris Longero
    Ober, Kaler, Grimes & Shriver
    130 East Baltimore Street
    Baltimore, MD  21202
    (410) 347-7675

    *Attorneys for Defendant Delsey Luggage*
    *Inc.*

By:   _/s/ _Robert J. Kenney_____
    Robert J. Kenney (*pro hac vice*)
    Q. Rick Corrie, (*pro hac vice*)
    Birch, Steward, Kolasch & Birch
    8110 Gatehouse Road, Suite 100E
    Falls Church, VA  22042
    (703) 205-8000

    *Attorneys for Defendant Magellan's*
    *International Travel Corporation*

By:   _/s/ _Gary M. Butter_____
    Gary M. Butter (GB-8925)
    Jennifer C. Tempesta (JC-4841)
    Baker Botts, LLP
    30 Rockefeller Plaza
    New York, NY 10112
    212-408-2546
    212-259-2546 (fax)

    *Attorneys for Defendant Tumi, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 8, 2010, I served the foregoing **CERTAIN DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BASED ON 28 U.S.C. § 1498** upon counsel for Plaintiff, via hand delivery and e-mail (PDF version), as well as all other counsel who have entered an appearance in this action via e-mail (PDF version).


            */s/ Heidsha Sheldon*
            Heidsha Sheldon

19