**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

DAVID A. TROPP,

                              Plaintiff,

        - against -

CONAIR CORPORATION, et al.,

                          Defendants.

------------------------------------------------------------x

                                      **MEMORANDUM & ORDER**

                                      08-CV-4446 (ENV) (RLM)

**VITALIANO, D.J.**

       Plaintiff David Tropp brings this action against defendants, 18 manufacturers and distributors of luggage, alleging infringement of United States Patent Nos. 7,021,537 ("the '537 patent") and 7,036,728 ("the '728 patent") (collectively, the "patents in suit"), under 35 U.S.C. § 271, in connection with their use of a dual-access lock system designed and licensed by Travel Sentry, Inc. ("Travel Sentry"). On September 17, 2010, this Court granted summary judgment to Travel Sentry awarding declaratory judgment on its claim of noninfringement of the same patents in suit. See Travel Sentry, Inc. v. Tropp, 736 F. Supp. 2d 623, 639 (E.D.N.Y. 2010) ("Travel Sentry").[1] For the reasons below, the Court finds the instant action barred by collateral estoppel based on the findings and holdings in Travel Sentry.

## I.    BACKGROUND

       The essential facts, set forth at length in Travel Sentry, are quite plain. The patents in suit, of which Tropp is the inventor, each claim a multi-step method of airline luggage screening. This method enables travelers to secure their checked luggage with a dual-access lock that can be

---

[1]    Familiarity with this decision — the concluding chapter in Tropp's patent litigation with Travel Sentry, the licensor of the rights claimed by the 18 defendants Tropp challenges in the case at bar — is presumed.

1

opened by airport security personnel using a master key. Tropp's company, Safe Skies, manufactures and sells a lock system that performs the initial steps of this process. Agents of the Transportation Security Administration ("TSA"), part of the United States Department of Homeland Security, perform the last two steps. Travel Sentry sells a similar lock system, which it licenses to defendants, who manufacture and sell luggage using the Travel Sentry system.

Tropp alleges that defendants' use of the Travel Sentry lock system infringes the patents in suit. However, in the Travel Sentry decision, this Court found that TSA, which performs the final two steps of the patented methods, was not controlled or directed by Travel Sentry, and thus there was no direct infringement under the joint infringement doctrine — which, in turn, vitiated any possibility of indirect infringement as well. Travel Sentry, 736 F. Supp. 2d at 638. The Court then ordered Tropp to show cause as to why the instant suit is not barred by collateral estoppel.[2] Id. at 639. At the request of the parties, mediation and discovery in this action were stayed on September 17, 2010, in response to the Court's order.

## II. STANDARD OF REVIEW

A court may dismiss a claim sua sponte on grounds of collateral estoppel. See Doe v. Pfrommer, 148 F.3d 73, 80 (2d Cir. 1998). Collateral estoppel, also known as issue preclusion, generally exists to "conserv[e] the time and resources of the parties and the court" and "promote[] the finality of judgments." Johnson v. Watkins, 101 F.3d 792, 795 (2d Cir. 1996). Under Second Circuit law,[3] issue preclusion applies when "(1) the identical issue was raised in a

---

[2] Also pending in this action is the defendants' motion for summary judgment on the ground that, pursuant to 28 U.S.C. § 1498(a), private parties cannot be liable for infringement when "the allegedly infringing method is performed both 'by' and 'for' the United States government and with its 'authorization [and] consent.'" Given the disposition of this case, the motion is denied as moot.

[3] Contrary to Tropp's assertion that the question of collateral estoppel is a matter of state law, given that this case and Travel Sentry both arise under federal patent law, the federal law of

previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 918 (2d Cir. 2010) (quoting Ball v. A. O. Smith Corp., 451 F.3d 66, 69 (2d Cir. 2006)). "'The party asserting collateral estoppel bears the burden of demonstrating that it is entitled to this relief.'" Bear, Stearns & Co. v. 1109580 Ontario, Inc., 409 F.3d 87, 93 (2d Cir. 2005) (quoting May Ship Repair Contracting Corp. v. Barge Columbia N.Y., 160 F. Supp. 2d 594, 599 (S.D.N.Y. 2001)). In his response to the Court's order to show cause, Tropp only raises a question as to the first of these four elements, and so the inquiry turns on the identicality of the issues in this case vis-à-vis those resolved in the Travel Sentry case.[4]

## III. DISCUSSION

### A. Issue Preclusion Based on Holding in Travel Sentry

It is clear that Tropp's theory of infringement in this case is identical to the one raised and decided by the Court in Travel Sentry. Tropp's claims in this case are based on the theory that defendants committed indirect infringement connected to direct infringement by Travel Sentry. The complaint here plainly states that *"Travel Sentry's travel lock system* is identical to

---

collateral estoppel applies. See, e.g., Aerogroup Int'l, Inc. v. Shoe Show, Inc., 966 F. Supp. 175, 179 (W.D.N.Y. 1997). Further, the Federal Circuit applies the law of the regional circuit courts in addressing matters outside patent law — and, in particular, regarding collateral estoppel on issues other than patent validity — even in the context of patent litigation. See Pharmacia & Upjohn Co. v. Mylan Pharms., Inc., 170 F.3d 1373, 1381 n.4 (Fed. Cir. 1999).

[4] To the extent that Tropp argues that he was denied a full and fair opportunity to litigate the Travel Sentry case — pursuant to the third element of the collateral estoppel analysis — that argument would also fail. Tropp's position that he should be entitled to additional discovery in *this* case misses the mark: the collateral estoppel inquiry turns on whether Tropp had a full and fair opportunity to litigation in the *previous* proceeding, a question Tropp does not address. Indeed, such an argument would cross the border of frivolousness since the previous case went to judgment after full discovery.

3

the one developed and patented by Mr. Tropp and infringes the '537 and '728 patents" (Compl. ¶ 28 (emphasis added)), and that "[e]ach and every one of the defendants named herein manufacture[s], distributes, licenses or sells luggage locks or products incorporating luggage locks that utilize *Travel Sentry's travel lock system*," (Compl. ¶ 29 (emphasis added)). Tropp then asserts that "[d]efendants have infringed the '537 patent by making *Travel Sentry's travel lock system* for luggage available to consumers" (Compl. ¶ 34 (emphasis added)), and that "[d]efendants have infringed the '728 patent by making *Travel Sentry's travel lock system* for luggage available to consumers," (Compl. ¶ 39 (emphasis added)). The point is unmistakable: the accused method here is "Travel Sentry's travel lock system," with Travel Sentry as the direct infringer and defendants accused of committing indirect infringement by making or selling products that utilize "Travel Sentry's travel lock system."[5] Nowhere does the complaint allege that defendants infringed the patents by making or selling products using any system other than Travel Sentry's. Nor does the complaint ever hint, much less contend, that defendants themselves directly infringe the patented method.

To cut to the quick, it was the very same accused method, "Travel Sentry's travel lock system," that the Court held to be noninfringing in the Travel Sentry case. In Travel Sentry, the Court held that Tropp's "direct infringement claim against Travel Sentry [was] only viable if there [was] sufficient evidence to permit a reasonable jury to infer that Travel Sentry directs and controls the TSA's performance" of the last two steps of the claimed method, pursuant to the

---

[5] Specifically, though Tropp's complaint is vague to the point of being threadbare, he appears to allege that defendants have committed contributory infringement under 35 U.S.C. § 271(c), which provides in relevant part: "Whoever offers to sell or sells within the United States or imports into the United States . . . a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer." According to Tropp's complaint in this case, the "patented process" at issue is "Travel Sentry's travel lock system."

joint infringement or "mastermind" doctrine as articulated by the Federal Circuit in the BMC and Muniauction cases. Travel Sentry, 736 F. Supp. 2d at 638 (citing BMC Res., Inc. v. Paymentech, L.P., 498 F.3d 1373, 1380-81 (Fed. Cir. 2007), and Muniauction, Inc. v. Thomson Corp., 532 F.3d 1318, 1329 (Fed. Cir. 2008)). The Court found, in the end, that "[t]he record provide[d] no such basis." Travel Sentry, 736 F. Supp. 2d at 638. Tropp had argued that control or direction could be inferred from a Memorandum of Understanding ("MOU") executed by Travel Sentry and TSA, by which TSA committed to make a "good faith effort" to use the Travel Sentry master keys when it was "practicable" to do so. Id. Ultimately, the Court found that the MOU was "insufficient to establish the 'control or direction' requirement for joint infringement liability established by the Federal Circuit in BMC Resources and Muniauction." Id.

The Court thus held that "Travel Sentry's travel lock system" does not infringe Tropp's patented method, and the Court's previous answer to this question estops Tropp from seeking a different answer to the same question now. Tropp is accusing defendants in this case of contributing to direct infringement that has already been found not to exist. Moreover, "[i]ndirect infringement . . . can only arise in the presence of direct infringement," Dynacore Holdings Corp. v. U.S. Philips Corp., 363 F.3d 1263, 1272 (Fed. Cir. 2004), and thus, under the claims alleged by Tropp in the complaint in this case, Travel Sentry's direct infringement is an essential element of any claim advancing defendants' liability for indirect infringement. Accordingly, the Court's prior finding of noninfringement by Travel Sentry precludes Tropp from alleging indirect infringement by Travel Sentry's licensees.[6]

---

[6]    In a further attempt to avoid the impact of the Travel Sentry decision, Tropp insinuates — but does not state explicitly — that he believes defendants have committed *direct* infringement of the patented method, proffering evidence that purports to show a relationship between defendants and TSA. Any such argument is meritless. First, Tropp's complaint in this case contains no allegations that defendants directly infringed the patented method; quite to the contrary, the complaint clearly names Travel Sentry as the only direct infringer.

## B. Pendency of Appeal

Tropp also argues that dismissal on collateral estoppel grounds is inappropriate because his appeal of the Travel Sentry decision is pending. This argument is unavailing. Tropp relies on Johnson v. Watkins, 101 F.3d 792, 795 (2d Cir. 1996), which held that under New York law, collateral estoppel is inappropriate where "a party has not had an opportunity to appeal an adverse finding," such as "an inability to obtain review" or a situation in which "there has been no review, even though an appeal was taken." This reliance is flawed on multiple grounds.

---

Second, even if Tropp were to amend his complaint to accuse defendants of direct infringement, any such amendment would be futile, if not wholly frivolous. In fact, Tropp's purported "evidence" of a relationship between defendant Travelpro and TSA — an email exchange between the two regarding a potential MOU — arose in the context of Travelpro's execution of a distribution agreement *with Tropp's company, Safe Skies.* (MacMull Ltr., Jan. 28, 2011, Ex. 1, at 2.) Tropp is thus claiming that an incipient MOU between TSA and *one of his own licensees* somehow indicates defendants' control or direction of TSA. Moreover, even if a Travel Sentry licensee had sought a MOU with TSA, it would still not amount to evidence of direct infringement, given that the Court already held in Travel Sentry that a MOU committing TSA only to make a "good faith effort" to use master keys when "practicable" does not satisfy the "control or direction" requirement for joint infringement under BMC and Muniauction. Travel Sentry, 736 F. Supp. 2d at 638. And indeed, to suggest that any defendant in this case has a relationship with TSA would border on disingenuousness given Tropp's own argument before the Court in opposition to defendants' motion for summary judgment: "Nor does the record show that any defendant entered into a contract with, fulfill orders for, or otherwise have any direct or indirect business, legal or other relationship with the TSA or any other government agency relating to the sale of Travel Sentry locks." (Summ. J. Opp'n at 4.) Tropp's proffer of purported evidence of TSA's contracting of luggage screening to a private entity (MacMull Ltr., Jan. 28, 2011, Exs. 3-5) is also meritless — and meaningless. The dispositive issue throughout both this case and Travel Sentry has been the "control or direction" exercised by Travel Sentry (or, pursuant to Tropp's eleventh hour argument, its licensees) over TSA's performance of luggage screening and, accordingly, the last two steps of the patented method. TSA's contracting of those steps to a private entity says *nothing* about whether Travel Sentry or its licensees controlled or directed that private entity. Indeed, if anything, TSA's contracting of luggage screening to private entities means that the relationship between Travel Sentry and the luggage screeners who use its master keys may be even more attenuated than previously thought — i.e., even further along the "spectrum" to "mere 'arms-length cooperation'" that "will not give rise to direct infringement by any party." Muniauction, 532 F.3d at 1329 (quoting BMC, 498 F.3d at 1381).

First, <u>Johnson</u> applies New York law and is thus inapplicable here. <u>See</u> note 3, <u>supra</u>.[7] Second, and dispositively, it is well-settled under federal law that "pending appeals do not alter the finality or preclusive effect of a judgment." <u>Studer v. SEC</u>, 148 F. App'x 58, 59 (2d Cir. 2005).

Accordingly, Tropp's pending appeal has no impact on <u>Travel Sentry</u>'s preclusive effect on the instant case. If, however, the <u>Travel Sentry</u> decision is reversed or vacated in relevant part on appeal, Tropp may move in this case for relief from final judgment under Rule 60. <u>See</u> Fed. R. Civ. P. 60(b)(5) ("[T]he court may relieve a party . . . from a final judgment" if "it is based on an earlier judgment that has been reversed or vacated."); <u>see also</u> <u>Galin v. U.S.</u>, No. 08-CV-2508, 2008 WL 5378387, at *9 (E.D.N.Y. Dec. 23, 2008).

## IV.    CONCLUSION

For all the foregoing reasons, Tropp's claims are barred by collateral estoppel and are dismissed with prejudice.

The Clerk of Court is directed to enter judgment and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
      August 5, 2011                                s/ENV

                                        ERIC N. VITALIANO
                                        United States District Judge

---

[7]   Even under New York law, <u>Johnson</u> is inapposite, as there is no suggestion that Tropp was somehow unable to obtain review of the <u>Travel Sentry</u> decision, and the Second Circuit has found that in New York "'the mere pendency of an appeal does not prevent the use of the challenged judgment as the basis of collaterally estopping a party to that judgment in a second proceeding.'" <u>DiSorbo v. Hoy</u>, 343 F.3d 172, 183 (2d Cir. 2003) (quoting <u>Amica Mut. Ins. Co. v. Jones</u>, 85 A.D.2d 727, 728, 445 N.Y.S.2d 820, 822 (2d Dep't 1981)).