UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
DAVID A. TROPP,

                         Plaintiff,

- against -

CONAIR CORPORATION, et al.,

                        Defendants.
-----------------------------------------------------------------x

**MEMORANDUM & ORDER**

08-CV-4446 (ENV) (RLM)

**VITALIANO, D.J.**

      Plaintiff David A. Tropp brought this action under 35 U.S.C. § 271 against 18 manufacturers and distributors of luggage, alleging infringement of United States Patent Nos. 7,021,537 and 7,036,728, in connection with their use of a dual-access lock system designed and licensed by Travel Sentry, Inc. ("Travel Sentry"). Certain defendants moved for summary judgment under 28 U.S.C. § 1498, arguing that Tropp's sole potential infringement remedy was an action against the United States, more specifically, the Transportation Security Administration ("TSA"). That motion was mooted, however, when the Court dismissed Tropp's claims against them as barred by collateral estoppel. Tropp v. Conair Corp., 08-CV-4446 (ENV) (RLM), 2011 WL 3511001 (E.D.N.Y Aug. 10, 2011) ("Tropp I"). The estoppel arose from an action in which Travel Sentry obtained by summary judgment a determination of noninfringement founded on essentially the same facts and involving the same patents at issue here. Travel Sentry, Inc. v. Tropp, 736 F. Supp.2d 623 (E.D.N.Y. 2010) ("Travel Sentry I").

      After its summary judgment victory, Travel Sentry moved for attorneys' fees and costs pursuant to 35 U.S.C. § 285 and 28 U.S.C. § 1927. The Court denied that motion on March 31,

1

2011. Travel Sentry, Inc. v. Tropp, 06-CV-6415 (ENV)(RLM), 2011 WL 1327134 (E.D.N.Y. March 31, 2011) ("Travel Sentry II"). Defendants Conair Corporation, Brookstone Stores, Inc. (and Brookstone Company, Inc.), Briggs & Riley Travelware LLC, Delsey Luggage Inc., eBags, Inc., Eagle Creek, a division of VF Outdoor, Inc., L.C. Industries, Inc., Master Lock Company, LLC, Magellan's International Travel Corporation, Outpac Designs, Inc., Samsonite Corporation, Travelpro International, Inc., Tumi, Inc., TRG Accessories, LLC, and Wordlock, Inc., who were not parties to the Travel Sentry action, have now moved in this case for attorneys' fees and costs pursuant to the same statutory provisions and based largely on the same arguments that the Court rejected in Travel Sentry II. For the reasons that follow, this motion is denied as well.

## Background

The Court recently explained the synergy in this carousel of multi-party, multi-case patent litigation:

> The patents in suit, of which Tropp is the inventor, each claim a multi-step method of airline luggage screening. This method enables travelers to secure their checked luggage with a dual-access lock that can be opened by airport security personnel using a master key. Tropp's company, Safe Skies, manufactures and sells a lock system that performs the initial steps of this process. Agents of the Transportation Security Administration ("TSA"), part of the United States Department of Homeland Security, perform the last two steps. Travel Sentry sells a similar lock system, which it licenses to defendants, who manufacture and sell luggage using the Travel Sentry system.
>
> Tropp alleges that defendants' use of the Travel Sentry lock system infringes the patents in suit. However, in the Travel Sentry decision, this Court found that TSA, which performs the final two steps of the patented methods, was not controlled or directed by Travel Sentry, and thus there was no direct infringement under the joint infringement doctrine — which, in turn, vitiated any possibility of indirect infringement as well.
>
> ...
>
> It is clear that Tropp's theory of infringement in this case is identical to the one raised and decided by the Court in Travel Sentry. Tropp's claims in this case are based on the theory that defendants committed indirect infringement connected to direct infringement by Travel Sentry.... The point is unmistakable: the accused method here is "Travel

Sentry's travel lock system," with Travel Sentry as the direct infringer and defendants accused of committing indirect infringement by making or selling products that utilize "Travel Sentry's travel lock system."

Tropp I, 2011 WL 3511001, at *1 (internal citations omitted). Overall familiarity with the twists and turns of this litigation, of course, is presumed.

## Discussion

At the conclusion of a patent case, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "Exceptional cases" are limited to those involving "inequitable conduct before the [Patent and Trademark Office]; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; [or] a frivolous suit or willful infringement." Epcon Gas Sys., Inc. v. Bauer Compressors, Inc., 279 F.3d 1022, 1034 (Fed. Cir. 2002). "Absent misconduct in [the course] of the litigation or in securing the patent, sanctions may be imposed against the patentee only if both (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless." Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc., 393 F.3d 1378, 1381 (Fed. Cir. 2005). Since "there is a presumption that an assertion of infringement of a duly granted patent is made in good faith . . . [c]lear and convincing evidence is required to overcome that presumption and show that the patentee's infringement claims were vexatious, unjustified, or frivolous, and were pursued in bad faith." Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH, 603 F.3d 943, 954 (Fed. Cir. 2010) (citations omitted).

Defendants press their motion against (and despite) a very difficult background: specifically, the Court's recent ruling that success against essentially the same infringement claims as those pursued here did not justify an award of attorneys' fees.[1] Defendants argue

---

[1] The Court does not lose sight of the proposition that to prove infringement in this case Tropp

3

primarily that Federal Circuit case law established before this action's filing so clearly undercut Tropp's potential arguments that he must have known the case was unwinnable at the time of its filing. But, this argument, for all relevant purposes, is the same argument rejected in Travel Sentry II on materially indistinguishable facts. As perhaps did Tropp when faced with then fresh circuit precedents, defendants have moved for fees in hope that the on-point, adverse precedent facing them could change by reconsideration or reversal or that exceptions could be made.

Defendants in that very vein attempt to distinguish their motion from Travel Sentry II on two main bases, one founded on case law that developed between the filing dates of the Travel Sentry action and this action and, the second, linked to an "admission" of Tropp's attorney. Each basis relies heavily on two Federal Circuit cases addressing infringement of method claims by multiple parties, so called, divided infringement liability: BMC Resources, Inc. v. Paymentech, L.P., 498 F.3d 1373 (Fed. Cir. 2007) and Muniauction, Inc. v. Thomson Corp., 532 F.3d 1318 (Fed. Cir. 2008).

In brief, BMC and Muniauction explained that "where the actions of multiple parties combine to perform every step of a claimed method, the claim is directly infringed only if one party exercises 'control or direction' over the entire process such that every step is attributable to the controlling party, i.e., the 'mastermind.'" Muniauction 532 F.3d at 1329 (quoting BMC 498 F.3d at 1380-81). In this light, defendants first argue they are entitled to a different outcome from that in Travel Sentry II because that action, unlike this one, was filed before BMC and Muniauction. This difference in timing adds nothing from a litigation practice perspective. BMC and Muniauction were decided before the Travel Sentry action concluded and, critically, while Tropp was still advancing his claims in that action. Moreover, and surprisingly in view of

---

would have had to prove indirect infringement by defendants after proving direct infringement by Travel Sentry.

4

defendants' argument, Travel Sentry II explicitly applied BMC *and* Muniauction when considering whether Tropp's infringement claims were supportable. 2011 WL 1327134, at *1-2. Given the near-concurrent pendency of the two Tropp litigations and the simultaneousness of all of these events in the real world of trial practice, the specific accident of calendar events in that galaxy is a difference without significance in assessing the propriety of granting fees, in one action as opposed to the other.

Defendants next attempt to use Tropp's attorney's own words to attack Tropp's evidence of infringement. Tropp's infringement argument relied on a Memorandum of Understanding (the "MOU") between Travel Sentry and TSA, which, he argued, demonstrated Travel Sentry's control or direction of the alleged infringing activities.[2] The MOU stated, inter alia, "TSA will make good faith efforts to distribute the passkeys and information provided by Travel Sentry on the use of the passkeys, and to use the passkeys to open checked baggage secured with Travel Sentry certified locks whenever practicable." Defendants rest on a quotation from Tropp's opposition to defendants' now-mooted and never considered summary judgment motion, which stated:

> The relationship between Travel Sentry and the TSA was governed by nothing more than [the MOU], an aspirational expression of a joint hope that TSA would make 'good faith efforts' to use Travel Sentry locks 'whenever practical.' No mandate, no specified government program and no contractual obligation was implicated."

(Docket Entry 157, at 4). Defendants highlight this quote to argue that, because Tropp admitted the MOU did not mandate TSA to act, Tropp knew he could not possibly satisfy the control or

---

[2] Tropp's infringement arguments in this case would further rely in part on licensing agreements between Travel Sentry and defendants.

5

direction standard, which defendants construe as being indisputably synonymous with vicarious liability.[3] This argument fails for two reasons.

First, Muniauction did not indisputably hold that vicarious liability is the only way to satisfy the control or direction standard. It only made clear that (1) mere "arms-length cooperation" is not sufficient; and (2) vicarious liability, if established, is sufficient. Muniauction, 532 F.3d at 1329-30. At the least, such a reading of BMC and Muniauction is not objectively baseless. See Global Patent Holdings, LLC v. Panthers BRHC LLC, 586 F. Supp.2d 1331, 1334-35 (S.D. Fla. 2008) (finding it "appears that" vicarious liability is required to satisfy the direction or control test, while also acknowledging that the "Federal Circuit did not explain with any specificity what it meant by 'direction or control'"); Dennis Crouch, MUNIAUCTION: Joint Infringement Requires Mastermind, Patently-O (July 15, 2008) http://www.patentlyo.com/patent/2008/07/muniauction-joi.html (opining that Muniauction "left some wiggle room," open space to be further developed by ligation, such that a "later case could still hold that it is not necessary to show facts sufficient to support traditional vicarious liability"). Accordingly, this argument in particular, and defendants' motion in general, depends on an exaggerated view of the certainty and static determinism of the law of divided infringement.

Defendants also overstate what can be gleaned from Tropp's "admission." Tropp's attorney was responding to arguments that he was precluded by 28 U.S.C. § 1498 from bringing a claim against certain defendants because, in short, the United States government (TSA) performed or authorized the alleged infringement. The language, referring to TSA's lack of

---

[3] Defendants equate the control or direction test with vicarious liability throughout their papers. (Defendants' Motion, at 1-15, 22-23). They even state, "After Muniauction ... it was *impossible* to prove infringement unless one of those accused infringers so controlled the actions of the other participant(s) that it would be vicariously liable for their acts." (Id. at 1 (emphasis added.))

obligation to "*use* Travel Sentry *locks*," appears to be an attempt to express that, because TSA was not obligated to use Travel Sentry locks, TSA was not requiring others to use them or designs associated with them. How Tropp's admission relates to the relevant question of whether or to what extent Travel Sentry directed or controlled TSA or others in using Travel Sentry locks, *when TSA or others elected to use the system*, is a different matter.[4] At any rate, it does not advance the cause of distinguishing this request for attorneys' fees from the Court's earlier denial of such an award in Travel Sentry II.

As a result, and based on the entire record, the Court finds (1) a failure by defendants to demonstrate the then-recent pronouncements in BMC and Muniauction rendered plaintiff's claims objectively baseless at the time they were advanced, and especially in the context of the two symbiotic Tropp litigations, and (2) no evidence of subjective bad faith by plaintiff. For each of these reasons, this is not the "exceptional" case contemplated by 35 U.S.C. § 285, and defendants' motion for fees under that provision is denied.

Separately from 35 U.S.C. § 285, however, a court may sanction any attorney who "multiplies the proceedings in any case unreasonably and vexatiously" by requiring him "to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. An award under § 1927 requires "clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith — that is, 'motivated by improper purposes such as harassment or delay.'" Eisemann v. Greene, 204 F.3d 393, 396 (2d Cir. 2000) (quoting Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d

---

[4] The Court rejects defendants' arguments based on the licensing agreements for the same reasons it rejects defendants' arguments based on Muniauction and the MOU. The Court has also considered and rejected defendants' arguments based on Tropp's general litigation and discovery conduct, including his opposition to two stay motions brought by defendants and denied by the Court.

323, 336 (2d Cir. 1999)).[5] The Second Circuit interprets this "bad faith" standard "restrictively," requiring "'*a high degree of specificity in the factual findings*" of the district court. Eisemann, 204 F.3d at 396 (quoting Dow Chem. Pac. Ltd. v. Rascator Mar. S.A., 782 F.2d 329, 344 (2d Cir. 1986)). Defendants' arguments for a fee award under 28 U.S.C. § 1927, since they are based on the same factual contentions advanced under 35 U.S.C. § 285, are similarly rejected. First, as discussed above and in the Court's prior decisions in these actions, Tropp's claims had some legal and factual support. See Schlaifer Nance, 194 F.3d at 337 (explaining "that a claim that fails as a matter of law is not necessarily lacking any basis at all"). Second, the Court finds no evidence that Tropp's counsel was motivated by a desire for harassment or delay. Section 1927 too provides no wellspring of fees and expenses for defendants.

### Conclusion

For the foregoing reasons, defendants' motion for attorneys' fees is denied.

The Clerk of Court shall otherwise tax costs in the ordinary course. The Clerk is further directed to enter judgment and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
February 22, 2012

s/ ENV
_____
ERIC N. VITALIANO
United States District Judge

---

[5] In a patent case, a district court applies the law of its circuit to nonpatent issues and the law of the Federal Circuit to substantive issues of patent law. See Invitrogen Corp. v. Biocrest Mfg., L.P., 424 F.3d 1374, 1378-79 (Fed Cir. 2005).